## LONG *v.* THE STATE.

1. The remarks of the judge to one of the witnesses for the accused, which were claimed to have had the effect of discrediting the witness, when considered in the light of the subsequent statements of the judge to the witness and the jury, were not of such prejudicial character as to require the granting of a new trial.

2. The remarks of the judge to counsel, when certain evidence was offered, and when the evidence was admitted, in the light of the explanation made of the incident in the note to the motion for a new trial, were not of such prejudicial character as to require the granting of a new trial.

3. The charges defining legal malice, as well as those relating to the offense of pointing a gun at another, and to the right of the jury to disregard the testimony of a successfully impeached witness, were free from error.

4. The omission of the judge to instruct the jury that the effect of statements made outside of the court by a witness, which contradicted those made on the stand, was not to establish the facts as detailed in the statement made out of court, but simply to discredit the witness, is not such an error as requires the granting of a new trial, in the absence of an appropriate and timely written request for an instruction on the subject.

5. When evidence of specific acts of violence had been admitted by consent of counsel and at the instance of a party seeking to establish the character of another for violence, it was not erroneous for the judge to instruct the jury that a character for violence can not, under the law, be established by proof of specific acts, but that, as the evidence of specific acts in the case was admitted by agreement, they were authorized to give it consideration. Such instructions were not inappropriate to the peculiar facts in the case, and were not calculated to weaken the force of whatever legal evidence had been introduced to establish a character for violence.

6. In the trial of a murder case, where the defense is that the accused slew the deceased under the fears of a reasonable man that a felony was about to be inflicted upon him, it was not erroneous to charge, "If, at the time the deadly blow was inflicted, the person who inflicts has well founded reasons to believe himself in imminent peril, without having, by his fault, produced the exigency, then such killing will not be murder."

7. When the judge, in his instructions, gives to the accused the benefit of a theory of defense relied on by him, in the exact language of a written request prepared by his counsel, an assignment of error, on the ground that the judge did not give this theory the prominence in the charge that it was entitled to, was without merit.

8. When a motion for a new trial contains a ground based upon the alleged discovery of new evidence, and the judge refuses to consider the ground, for the reason that the affidavits filed in support thereof are not entitled in the cause, and do not otherwise show the purpose for

which they were filed, this court will not consider the ground. The refusal of the judge to consider the ground for the reason stated is a ruling by him on the insufficiency of the affidavits; and, in the absence of a proper assignment of error in the bill of exceptions upon this ruling, this court can not consider the question as to whether the affidavits were prepared in conformity to law.

9. The evidence, though conflicting, was sufficient to authorize the verdict, and no sufficient reason has been shown for reversing the judgment.

Argued December 18, 1906,—Decided January 17, 1907.

Indictment for murder. Before Judge Brand. Walton superior court. November 20, 1906.

*J. H. Felker* and *Foster & Foster,* for plaintiff in error.

*John C. Hart, attorney-general, S. J. Tribble, solicitor-general,* and *L. C. Russell,* contra.

COBB, P. J. This case makes its second appearance. *Long v. State,* 126 *Ga.* 109. The accused has been convicted, for the second time, of the offense of murder, and he complains of the refusal of the judge to grant him a second new trial. The motion contains the general grounds and numerous special grounds. Such of the special grounds as are verified by the judge and were insisted on in the argument here will be now dealt with.

1. A witness, Wortham, was offered by the defense, by whom it was expected to prove that he was an expert shot, and had a knowledge of guns, pistols, and shells. He was asked the question, "Do you belong to any kind of club?" Whereupon the judge remarked, "Half of these clubs shoot part of the time, and drink and play cards the other time. I do not know about, and do not mean to apply this statement to this man." It is claimed by counsel for the accused that this remark of the judge was calculated to discredit the witness, and that a new trial should be granted for this reason. It appears, from a note of the judge to this ground of the motion, that almost immediately after the alleged prejudicial remark was made, the judge stated that he desired to say, in justice to the witness, that he ought not to have stated what he did about members of such clubs, and that the statement was withdrawn, and that the jury were instructed to pay no attention to it, and not to allow it in any way to discredit the witness or weaken his evidence before them; and the judge, in the hearing of the jury, stated to the witness that his remark did not apply to him, and that no reflection upon him was intended. In addition to this, at the conclu-

sion of the introduction of the evidence in the case, and before the argument was begun, the judge turned to the jury and remarked that the statement about the witness, made to counsel, was a mere pleasantry, and, while already withdrawn from their consideration and explained to the witness, he desired the jury to distinctly understand that it was not to be considered by them as in any way discrediting the witness; that the jury must consider the testimony of the witness just as if no such remark had ever been made; and then proceeded to caution the jury not to be influenced in any way by anything that the judge said, either on his own motion or in reply to statements made by counsel during the progress of the case; and that they must arrive at the verdict solely in the light of the argument of counsel and of the instructions of the judge. While, of course, we realize that that which has once made an impression upon the mind can not ever afterwards be entirely eradicated, the evil resulting from the expression which might have a harmful tendency may be greatly lessened or entirely removed by explanation of the person whose remark caused the impression. The judge seems to have realized that the expression used by him was ill-advised and should not have been made. Unexplained it might have had a tendency to discredit the witness, but in the light of the statements made by the judge to the witness, and the two separate and distinct statements to the jury, in all of which he expressly declared no intention to discredit the witness, it seems to us that any harmful effect which might have resulted from the language of the judge was altogether removed. In fact, the judge, in his statement to the witness and statements to the jury, really gave to the witness a more prominent position as a witness than he might have been entitled to. The remark of the judge might have discredited him. The subsequent remarks of the judge could not have had any other effect than to give him credit. We do not think that this incident was of such a prejudicial nature as to require the granting of a new trial.

2. The accused offered a witness, Harrison, who testified that the right side of the deceased was to the accused when he was shot. The State introduced three witnesses who swore that Harrison testified before the coroner's jury that the back of the deceased was to the accused when he was shot. The accused offered the evidence of Harrison before the coroner's jury, as taken down

in writing and filed with the clerk.   When this evidence was of-fered the judge remarked, "Judge Foster, do you stand there, in your place, and tell me that this testimony ought to be intro-duced?"   Judge Foster replied, "That was taken down at the time he testified."   The judge then said, "I am going to admit it and leave it for the jury to say.   I do not want to do anything wrong in this matter.   I don't want to withhold anything that will throw light on this transaction.   On this idea I am going to let it in and leave it for the jury to say, in view of the testimony which you have introduced on that subject,—Mr. Harrison's statement, the testimony itself, and Mr. Walker's statement of the character of the stenographer."   The complaint made of this incident is that the language of the judge to Judge Foster was calculated to create the impression on the mind of the jury that counsel was insincere, and was seeking to put in that which he knew to be illegal evidence, and was calculated to weaken the force of the evidence when ad-mitted, and the language the judge used when he admitted the evi-dence was calculated to create the impression that the judge did not think it was competent, and a suspicion was thereby cast upon the evidence.   It was claimed that the effect of the language upon the mind of the jury was that the judge was not admitting the evidence because it was legal and competent, but for the sole reason that he did not desire to do anything wrong, or withhold anything that would throw light on the transaction.   To this ground of the motion the judge appends a note, stating that he asked the ques-tion set forth in the ground, having in mind, at the time, the familiar rule that a witness can not accredit himself by showing that his testimony on a former occasion is consistent with that de-livered at the trial; not recalling that any witness had testified about what Harrison swore before the coroner's jury; that Judge Foster did not state what was his object in offering the evidence, and that the remark made by him, in admitting the testimony, is not accurately stated in the motion, but what he said was as fol-lows:   "I am going to admit it and leave it to the jury to say if his testimony before the coroner's jury is consistent with that here. I do not want to do anything wrong in this matter.   I do not want to withhold anything that will throw light on this case.   On this idea I am going to let it in and leave it for the jury to say, in view of the testimony which you, Judge Foster, introduced on that sub-

ject, and from Mr. Harrison's statement before the coroner's jury, which you offer, and his testimony on the trial here, and from Mr. Walker's statement of the competency of the stenographer who took down Harrison's statement, who is right about what he swore before the coroner's jury. Defendant has a right to show what he, Harrison, testified on that trial." There was evidence tending to show that the stenographer who took down the testimony at the coroner's inquest was not an accurate reporter; and no one testified that the evidence, as filed by the coroner, was a correct report. The judge admitted the evidence, making the statement above referred to, leaving all these questions to be determined by the jury. We do not think that this incident was so prejudicial in its nature as to require a reversal of the judgment.

3. Error is assigned upon the following charge: "Legal malice is not ill will or hatred. It is an unlawful intention to kill, without justification or mitigation, which must exist at the time of the killing. But it is not necessary for that intention to exist for any length of time before the killing. A man may form the intention to kill, do the killing instantly, and regret the deed as soon as done." There was no error in this charge. *Bailey* v. *State,* 70 *Ga.* 617 (2 a) ; *Weeks* v. *State,* 79 *Ga.* 37 (4). Complaint is made that the court erred, after charging as follows: "It is only when a felony is intended that the killing is justifiable. A felony is any offense punishable by death or by imprisonment in the penitentiary," in adding, "Simply pointing a gun at another is not a felony, it is a misdemeanor." One theory of the State was that while the deceased had pointed a gun at the accused, he had also, at the same time, pointed it at two others. Counsel for the accused contends that the instruction in reference to pointing a gun at another being only a misdemeanor was calculated to create the impression that the defense of the accused rested solely upon the ground of reasonable fear resulting from the gun being pointed, whereas the defense also rested upon the ground that the deceased was about to use a pistol. It was the duty of the judge to submit to the jury all of the theories of the accused; and the charge does not seem, on the statement made by the judge as to what were the contentions of the parties, to have been erroneous. Error was assigned upon the following charge: "When a witness has been successfully impeached by any of the legal methods, that is, where his unworthi-

ness of credit is absolutely established in the minds of the jury, he ought not to be believed, and it is the duty of the jury to disregard his entire testimony unless it is corroborated; it being, as a matter of course, always for the jury to determine whether a witness has been in fact so impeached." Objection is made to that portion which declares that it is the duty of the jury to disregard the entire testimony of an impeached witness unless it is corroborated. If a witness has been successfully impeached, he has been shown to be utterly unworthy of credit, and, of course, a witness in this position should not be believed. The charge of the judge seems to be in exact accord with the rule as laid down in *Powell* v. *State,* 122 *Ga.* 571.

4. Complaint is made that the court failed to charge the jury that the effect of evidence showing that a witness had made statements contrary to those contained in his testimony was not to establish the facts stated in such contradictory statements, but merely to discredit the witness. There was no request for instructions on this subject, and, in the absence of such a request, the omission of the judge will not be sufficient reason for the granting of a new trial.

5. Error is assigned upon the following charge: "A general character for violence can not be established by proof of specific acts, under the law, but in this case, by agreement of counsel, specific acts have been admitted to you and you are authorized to give them consideration." It seems that, by agreement between the solicitor-general and counsel for the accused, specific acts of violence were admitted without objection. Notwithstanding this course on the part of counsel, it was not erroneous for the judge to give the jury the correct law. No agreement of counsel can constrain the judge to lay down, in instructing the jury, that which is not the law of the land. The complaint, however, is that the language of the judge might have had the effect to weaken the force of the legal evidence offered to establish violent character. We do not think the instructions were subject to this criticism.

6. Complaint is made of the following charge: "If, at the time the deadly blow was inflicted, the person who inflicts has well founded reasons to believe himself in imminent peril, without having, by his fault, produced the exigency, then such killing will not be murder." The error assigned is that the words "has well

founded reasons to believe" state the rule too strongly against the right of a person to kill as the result of reasonable fears. There is no merit in this objection. *Doyal* v. *State*, 70 *Ga.* 148-9.

7. In one of the grounds of the motion for a new trial it is stated that the defense of the accused rested upon two propositions: (1) that he killed the deceased under an honest belief that his own life was in danger, and (2) that the killing was due to the fact that an honest belief existed in the mind of the accused that the deceased was about to commit a felony upon the witness Harrison, or the witness Rogers, or both, and it was necessary to take the life of the deceased to prevent the commission of this felony. Error is assigned in the following language: "This latter proposition was nowhere given the prominence in the charge that was given to the first proposition." It is stated, in the assignment of error, that this theory was embraced in the instructions of the judge, but the complaint is that it was not given the prominence that it was entitled to, and was not coupled with the other defense in such way as would give the accused the full benefit of the defense. We see no reason for reversing the judgment on account of the manner in which the judge dealt with the different theories of the defense, as it is admitted, in the assignment of error, that the charge embraced each of the theories. In addition to this it appears, from a note to this ground, that the theory referred to in the assignment of error was presented to the jury in a written request presented by counsel for the accused. The judge also states that when this request was read to the jury by one of the counsel before it was handed to him, this was the first intimation that he had that the defense would be insisted on. It seems, therefore, that the accused has received the benefit of this theory in the exact language of a request which his counsel prepared.

8. In one of the grounds of the motion for a new trial complaint is made of the refusal of the judge to grant a new trial upon the ground of newly discovered evidence. The judge refused to consider this ground, holding that the affidavits were not entitled in the cause. There is no assignment of error, in the bill of exceptions, upon this ruling by the judge, and therefore the ground will not be considered. We can not, of course, on the merits of this ground review and reverse the judgment; for the reason that the judge has never passed on this question. The judgment can not

be reversed upon his ruling as to the sufficiency of the affidavits; for the reason that there is no assignment of error which brings this matter before the court. If there had been an assignment of error complaining of the ruling in reference to the sufficiency of the affidavits, this court would have been authorized to pass upon this question, and, if the ruling was erroneous, to have given the case such direction as would have secured to the accused the right of a hearing upon this ground of his motion.

9. The foregoing discussion disposes of all the special assignments of error that are in such condition that we can properly deal with them. The charge of the court, when taken as a whole, fully, fairly, and clearly set forth the law relating to every material issue in the case, and the accused was given the benefit of every theory of defense that the evidence, in any view, authorized. The evidence was conflicting, and was of such character as to have authorized, in one view at least, a verdict of acquittal; but there was certainly ample evidence authorizing the verdict as rendered. The only assignments of error in the case which have given any serious trouble are those relating to the remarks of the judge to the witness Wortham, and his remarks to counsel when admitting the evidence of Harrison as taken down at the coroner's inquest. These incidents in the trial were irregularities, and, of course, it would have been far better if they had not taken place; but, after a most careful examination of the record, we do not feel justified in saying that these irregularities were of such character as to require us to reverse the judgment refusing a new trial. The verdict now sought to be set aside is the second one rendered in the case; and while, of course, no number of verdicts will sanctify a finding unauthorized in law, still, where in each instance there was evidence authorizing the finding, and a second finding is under review, this court will not reverse a judgment refusing a new trial, for a mere irregularity which took place during a protracted trial, when our minds are satisfied that nothing in the irregularity was calculated to seriously prejudice the accused, and that a different result would not probably have been reached even if the irregularity had not occurred. We think the defendant has had a fair and impartial trial, within the meaning of the law, and the judgment complained of must stand.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*