## 29574. WISDOM v. THE STATE.

INGRAM, Justice.

This case is on appeal from a judgment of convictions of one count of armed robbery and three counts of burglary in Fulton Superior Court for which appellant was sentenced to serve a total of 21 years imprisonment. Our review of the case leads us to affirmance of the convictions.

The jury was authorized to believe from the evidence at trial that during the early morning hours of March 11, 1974, the appellant led four co-conspirators, Cecil Alley McGuffey, William Samuel Wild, Jewel Loman and "Trick Baby" Patterson, on a burglary spree of the Medical Arts Building in Atlanta. Appellant and his associates first burglarized a dentist's office in the

building where appellant "cracked" a safe, next burglarized a pharmacy where appellant cracked another safe, and subsequently pistol-whipped and robbed a night watchman at gunpoint after putting a pillow cover over his face. The night watchman was then forced downstairs to the basement area of the building, where his hands were tied behind his back, after which a third office was burglarized.

Money, stamps, dangerous drugs, narcotics, a pistol, personal property, gold and checks were taken during the course of the burglaries. Appellant and the others involved were later arrested in an apartment pursuant to a search warrant, and pills, tablets, drugs, syringes, capsules, vials and weapons were found on the premises. Those present, including appellant, were arrested. At appellant's trial, his co-conspirators, William Samuel Wild and Cecil Allen McGuffey, testified for the state and implicated appellant as their leader.

In "Point I" of the argument and citation of authority in appellant's brief, it is urged that "[t]he court erred in overruling the motion of defendant for discovery and inspection and failed to conduct certain independent hearings outside the jury." Appellant also argues that the "record nowise indicates any compliance with Brady v. Maryland, 373 U. S. 83 (1963)," and the trial court failed to comply with Williams v. Dutton, 400 F2d 797.

The transcript does not authorize a review of this issue as it is now presented on appeal. The motion made at the commencement of the trial in appellant's behalf was to obtain access to any statements made by appellant's co-indictees in order to determine the voluntariness of the statements. The prosecution represented to the trial court it had no incriminating statement made by appellant and this representation was unchallenged by appellant and accepted as truth by the trial court. The court then overruled appellant's motion regarding any statements of the co-indictees on the ground that appellant had not demonstrated any basis for attempting to raise an issue as to the voluntariness of statements made by the co-indictees.

Appellant now argues for the first time in this appeal not that the statements were used against him at the trial

but that they were relevant to the credibility of the co-indictees who testified against appellant. We can understand the argument that these statements might have been helpful to appellant in cross examining these witnesses at the trial. However, the trial court was not asked to rule on this issue and we are not authorized to make a de novo ruling on it. We hold that appellant's failure to assert this issue for consideration in the trial court forecloses review of the issue on appeal. *Roberts v. State,* 228 Ga. 298, 299 (1) (185 SE2d 385) (1971); *Fulton v. State,* 127 Ga. App. 711, 712 (4) (194 SE2d 615) (1972).

We note that even if this issue had been passed on by the trial court and was properly before this court for consideration, appellant would still have the burden of showing that the denial of these statements to him so impaired his defense that he was denied a fair trial within the meaning of the Brady rule. See United States v. White, 450 F2d 264 (5th Cir., 1971), and *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30). Appellant has not carried this burden on appeal.

Appellant also urges as error the testimony of Woodrow Chapman, a night watchman, that he "had a brain concussion." This answer was in response to the question, "Do you remember what your condition was at that time?" Appellant's argument is that Chapman was not qualified as an expert and could not properly give testimony about his medical condition. Appellant relies on *Patterson v. State,* 86 Ga. 70, 73 (12 SE 174). No actual objection to this answer was made at the trial. The transcript does disclose that defense counsel made the following observation after the witness' answer: "Your Honor, may we note—I don't know that this gentleman is qualified to say whether or not he had a brain concussion." However, even if this observation is considered as a proper and timely objection, the alleged error would be harmless. Whether this witness had a brain concussion was not essential to the issues submitted to the jury, and the admission of this testimony was harmless to defendant's case.

Objections were made at the trial to the testimony of the daughter of Woodrow Chapman about his condition and her opinion as to whether his condition was

permanent. However, the daughter was shown to be a medical assistant and she was properly permitted to testify only as to her observation and examination of her father's physical condition. See, *Richmond County Hospital Authority v. Haynes,* 121 Ga. App. 537, 543 (174 SE2d 364). No error appears.

Appellant also complains that the trial court erred in permitting the prosecutor to question the state's witness, William Samuel Wild, a co-indictee, about an alleged jail fight and the witness' release on bond. Appellant argues this testimony was prejudicial to him because there was no evidence to show that he caused or contributed to the fight. The transcript reveals that the witness was asked on cross examination by defense counsel about the witness' release from jail on bond. Thus, it was not error for the trial court to permit the prosecutor to go into the matter on redirect examination of the witness. See, *Aycock v. State,* 62 Ga. App. 812, 813 (2) (10 SE2d 84). The same is true of appellant's complaint about the witness' testimony regarding the alleged jail fight. Defense counsel asked the witness on cross examination: "Did Billy Wisdom hit you in jail?" The witness answered, "No, sir." On redirect by the state, the witness was asked if Billy Wisdom signaled some men in the jail to beat him up. We also note that the witness never answers this question because defense counsel interrupted with the statement that the prosecutor was cross examining his own witness. The trial court agreed and no answer was given. We find no error here. In addition, we find no reversible error in the trial court's subsequent refusal to grant a mistrial the next day because of the unanswered question which had been effectively ruled out by the trial court at the close of the preceding day's testimony. The case relied upon by appellant, *Collins v. State,* 86 Ga. App. 157 (71 SE2d 99) does not require a different result.

Appellant also asserts as error the overruling of his motion to suppress certain evidence seized by the authorities, under a search warrant, from the residence of James F. (Frankie) Simuel. Several legal deficiencies in the warrant are urged in support of this contention. However, appellant has not shown in the trial court or in this court any possessory interest in the premises

searched or any legitimate expectation of privacy as to the property seized in the search. See, *Brinks v. State,* 232 Ga. 13 (3) (205 SE2d 247), where it was held that the defendant has no standing to complain of an alleged warrantless search of a stolen automobile and that the admission of evidence obtained from the automobile was not reversible error. See also, *McCorquodale v. State,* 233 Ga. 369, 374 (4) (211 SE2d 577).

It is also argued that drugs seized in the police raid of Frankie Simuel's apartment were erroneously admitted into evidence as there was no showing by the state that the drugs were relevant to the prosecution's case or were ever in the personal possession of appellant. There was evidence that these drugs were the same drugs taken by appellant and his co-conspirators during the burglary of the pharmacy in the Medical Arts Building. Consequently, the seized drugs were relevant and material to the indictment count for the burglary of the pharmacy. *Herring v. State,* 232 Ga. 683 (2) (208 SE2d 490) (1974). The testimony adduced at trial indicates that the drugs seized at Simuel's apartment were not found on the person of appellant. However, they were found in his immediate presence. Under this evidence, the jury was authorized to find the drugs were in the constructive possession of appellant. *Lee v. State,* 126 Ga. App. 38 (2) (189 SE2d 872). Appellant also argues there was a break in the chain of custody of the drugs seized at Simuel's apartment. We do not agree as the testimony of Detective Waddell, Detective Collins, Detective Dickerson and Mr. Panter, of the State Crime Laboratory, established a chain without hiatus of the drugs from seizure to courtroom. We find no error in these contentions.

In three enumerations of error, it is contended the trial court erred in allowing the prosecution to cross examine its own witness, Donna Colbert, because of entrapment. Prior to trial, the witness gave the state a written statement which the state relied upon in calling her as a witness. It was shown that her testimony was inconsistent with the prior statement and the state was surprised by her testimony. We hold there was a sufficient showing to authorize the trial court to permit the state to cross examine this witness as a hostile witness. Code Ann.

§ 38-1801; *Hutchins v. State,* 229 Ga. 804, 807 (194 SE2d 442).

The state's use of the prior inconsistent statement of the witness, Donna Colbert, was not error. The statement was introduced into evidence in support of the state's contention that it had been entrapped by the witness' testimony which was inconsistent with her prior written statement. It was admissible for this purpose, but not as direct evidence to prove the truth of its contents since it contained hearsay. As the statement was used only for impeachment purposes and did not go out with the jury, we find no error. See, *State Hwy. Dept. v. Raines,* 129 Ga. App. 123, 127 (199 SE2d 96), and cases there cited.

The appellant further contends that it was error for the trial court to permit the state to use the prior statement of the witness, Donna Colbert, in framing questions for cross examination. Specifically, it is argued that appellant's character was put in issue, and that under *Hooks v. State,* 101 Ga. App. 351 (114 SE2d 48) prejudicial error necessarily occurred when appellant was referred to as a "safecracker." We find no merit in this contention, since this reference to appellant as a "safecracker" came in a question by the state's attorney which was never answered by the witness, Donna Colbert, and appellant was identified in testimony by two of his co-conspirators as the one who "cracked" the safe in the dentist's office and also in the pharmacy. The trial court did not err in overruling a motion for mistrial based upon this ground or in allowing the state's attorney to refer in his jury argument to the prior written statement of the witness, Donna Colbert.

The other objections to the district attorney's jury argument, complained of by appellant, are also without merit. Counsel is permitted, in the sound discretion of the court, to argue all reasonable inferences and deductions which may be drawn from the evidence however illogical they may seem to the opposite party. See, *Wheeler v. State,* 220 Ga. 535 (140 SE2d 258), and *Hightower v. State,* 225 Ga. 681 (3) (171 SE2d 148). The discretion of the trial court in handling these matters will not be disturbed on appeal except in clear cases of abuse and we find none here.

Appellant further urges as error the trial court's failure to give, without request, a specific instruction to the jury "that impeachment evidence against a witness (Donna Colbert) not a party is never evidence of the truth of the matter contained therein." We agree that a specific instruction regarding the use and effect of the prior out of court statement by this witness would have been appropriate. Doubtlessly, the trial court would have given such an instruction if it had been requested at the trial. We conclude, however, that the court's failure to give such an instruction without request does not require the grant of a new trial, especially in view of the full and correct instructions delivered by the court on the weight and credit to be given a witness when inconsistencies appear in the testimony. See, *Long v. State,* 127 Ga. 350 (4) (56 SE 444), and *Walker v. State,* 137 Ga. 398 (5) (73 SE 368).

We turn next to consider the trial court's charge on the law of conspiracy raised as an issue on appeal by enumeration of error 19. No complaint is made to the substance of the charge given. Appellant's argument is that it was not applicable in this case because "conspiracy is a separate crime only . . . where the crime conspired to be committed had not, in fact, been committed." Appellant was not charged with the crime of conspiracy. He was charged with the commission of several crimes along with others who were also parties to the crimes. The evidence abundantly established complicity of appellant with the other persons in the armed robbery and burglaries with which appellant was charged and it fully authorized the charge on the law of conspiracy. There was no evidence tending to show appellant ever made any effort to withdraw from the conspiracy. See *Battle v. State,* 231 Ga. 501 (202 SE2d 449); *McKenzie v. State,* 231 Ga. 513, 514 (202 SE2d 417); *Foster v. State,* 230 Ga. 666 (3) (198 SE2d 847); and, *Walden v. State,* 121 Ga. App. 142 (1) (173 SE2d 110).

In support of enumeration of error No. 20, appellant argues that the trial court erred in charging the jury on the law of recent possession as "there was simply no evidence that [appellant] possessed the drugs in question."

The evidence supports a finding that the drugs were

in appellant's immediate presence at the time they were seized by the officers. This was sufficient to authorize the charge complained of by appellant. See, *Lee v. State,* 126 Ga. App. 38, supra.

Appellant also claims the trial court erred in not charging on the lesser included offenses of simple assault or theft by taking. Unlike the evidence in *Hensley v. State,* 228 Ga. 501 (186 SE2d 729), the evidence at appellant's trial did not demand a jury instruction on the elements of theft by taking or the elements of simple assault. See, *Holcomb v. State,* 230 Ga. 525 (198 SE2d 179). Therefore, the trial court did not err in failing to charge on these offenses.

Additional argument is made by appellant, in a supplemental brief, that the trial court erred in allowing his two co-indictees (Wild and McGuffey) to testify against him because their constitutional rights were violated by the police search and seizure made under an alleged defective warrant. Appellant reasons that since his arrest and conviction grew out of the alleged denial of their constitutional rights, his constitutional rights have necessarily been violated as a consequence. We disagree with this vicarious denial of constitutional rights theory. The two co-indictees testified at the trial for the state. Appellant was capably represented by counsel and was given the constitutional right to confront these witnesses against him and to have a thorough and sifting cross examination of each of them. We hold their testimony was not "unconstitutionally obtained evidence" but on the contrary was authorized and material to the issues in the case. See, Alderman v. United States, 394 U. S. 165.

At a hearing on a motion for new trial filed by appellant, the trial court was urged to summon all the jurors who convicted appellant to give testimony on whether their verdict had been influenced by a newspaper article published on the day of their verdict. Appellant submitted an affidavit at the hearing executed by one of the jurors, Ralph E. McGill, Jr., several weeks after the trial which stated his verdict was influenced by the newspaper article. The trial court declined to conduct such an evidentiary hearing or to grant a new trial based on the affidavit and appellant argues this was prejudicial

error. Clearly, the juror's affidavit has to be considered as tending to impeach his verdict. This is not permissible under Georgia law. Code § 110-109. See also, *Pope v. State,* 28 Ga. App. 568 (3) (112 SE 169); *Rylee v. State,* 28 Ga. App. 230 (3) (110 SE 749); and, *Alley v. State,* 99 Ga. App. 322 (5) (108 SE2d 282).

The language of the newspaper article itself dealt primarily with suspected felonious activity by William Samuel Wild in an alleged drug-murder shooting, not connected with appellant, which occurred subsequent to the crimes involved here. Wild was a chief witness for the state in the present case as a co-conspirator of appellant in this burglary spree. There is a reference in the article to Wild's arrest for the present crimes. However, appellant is not mentioned in the article, and at the time of its publication the jury had already heard testimony from this witness, William Samuel Wild, implicating appellant only in the present crimes. Therefore, appellant was not connected by the article to Wild's arrest for a subsequent crime and the article tends to impeach the credibility of the state's witness rather than to harm the defendant.

This conclusion is further substantiated by the following event: On the last day of the trial, the date on which the newspaper article was published, defense counsel recalled the witness Wild for further cross examination. Counsel asked the witness, "Why did you shoot and kill somebody after you left that day?" On objection, the question was not answered and counsel then attempted to explore the witness' involvement in the subsequent crimes not connected with appellant. He succeeded in establishing that Wild had been shot in the later incident. Thus, defense counsel brought to the jury's attention the alleged criminal matter involving the witness Wild which had been related in the newspaper article. So, even if the affidavit and newspaper article are considered in reviewing this alleged error, appellant has failed to show resulting harm. The special facts of this case do not show reversible error and we do not believe that Marshall v. United States, 360 U. S. 310, requires a conclusion to the contrary.

Finally, appellant complains in his supplemental brief of the denial of a meaningful preliminary hearing in

the case. He asserts that he was not afforded an opportunity to cross examine Cecil Allen McGuffey or obtain access to signed statements used against him at the preliminary hearing. These objections were not ruled on by the trial court and present no justiciable question on appeal. They come too late. Problems regarding preliminary hearings, including a denial of a preliminary hearing, should be raised before indictment and trial to preserve the issues for review on appeal. We find no merit in this argument at this stage of the case.

The remaining enumerations of error are not supported by argument or citations of authority. Therefore, they must be considered as abandoned under Rule 18 c (2) of this court.

*Judgment affirmed. All the Justices concur, except Gunter, J., who concurs in the judgment only.*

Submitted January 13, 1975 — Decided June 2, 1975 — Rehearing denied June 25, 1975.

*White & Jewett, C. Lawrence Jewett, Nicholas F. Maniscalco,* for appellant.

*Arthur K. Bolton, Attorney General, Lewis R. Slaton, District Attorney, R. David Petersen, Jack Mallard, Joseph J. Drolet, Assistant District Attorneys,* for appellee.